IN THE UNITED STATES COURT OF APPEALS
FOR THE FIFTH CIRCUIT

No. 13-11162

United States Court of Appeals
Fifth Circuit
**FILED**
November 24, 2014
Lyle W. Cayce
Clerk

**FILED**
January 13, 2015
KAREN MITCHELL
CLERK, U.S. DISTRICT COURT

JAMES C. WETHERBE, PH.D,

         Plaintiff–Appellee

versus

BOB SMITH, PH.D., Individually and in His Official Capacity;
LAWRENCE SCHOVANEC, PH.D.,
Individually and in His Official Capacity,

         Defendants–Appellants.

Appeal from the United States District Court
for the Northern District of Texas
USDC No. 5:12-CV-218

Before SMITH, BARKSDALE, and HAYNES, Circuit Judges.

JERRY E. SMITH, Circuit Judge:*

  James Wetherbe, a professor at Texas Tech University ("Texas Tech"), sued Bob Smith, the former provost, under 42 U.S.C. § 1983 for allegedly retaliating against Wetherbe for his views on tenure. The district court denied

---

 * Pursuant to 5TH CIR. R. 47.5, the court has determined that this opinion should not be published and is not precedent except under the limited circumstances set forth in 5TH CIR. R. 47.5.4.

Smith's motion to dismiss under Federal Rule of Civil Procedure 12(b)(6) for failure to state a claim and on the ground of qualified immunity ("QI"). Because Wetherbe fails to state a claim and therefore does not satisfy the first prong of QI, we reverse and render a judgment of dismissal on the First Amendment-retaliation claim and remand for proceedings as needed.

I.

Wetherbe has been a professor at Texas Tech since 2000 and before then was a professor at other institutions for twenty-seven years. When he was a professor at the University of Minnesota twenty or so years ago, he resigned tenure and has continued to decline offers of tenure, thinking that tenure is damaging to the educational system and that foregoing tenure gives him credibility in the business world. He has been outspoken on his views about the alleged evils of tenure for at least two decades.

In August 2011, the dean of Texas Tech's Rawls College of Business announced his plan to retire. The outgoing dean had not had tenure, and the announcement did not specify that tenure was required for the deanship. Smith, then the provost, put Wetherbe on the search committee for the new dean, but Wetherbe resigned from the committee so that he could pursue the position himself.

At that time, Wetherbe was nominated for the Horn Professorship, a prestigious position that comes with certain financial advantages. The Horn Committee approved the nomination and scheduled it for the March 2012 meeting of the Board of Regents, but at the request of the President's Office the item was pulled from the agenda in February. At Smith's behest, the Committee conducted a new vote on Wetherbe in a meeting at which Smith changed his vote; the nomination still was approved.

Wetherbe was in an interview group for the deanship in March 2012. A new question had been added to the set of inquiries for the candidates asking whether each applicant had tenure. Smith admitted that the question was added because he had found out only during the dean-application process that Wetherbe was not tenured. Wetherbe shared his views on tenure with the search committee at the off-site interview, at which Smith was present.

The committee listed Wetherbe as one of its four top recommendations for an on-campus interview, but Smith decided to interview only the other three top candidates. When one of them withdrew, Smith selected another candidate who had been recommended lower by the search committee; that person was ultimately selected to be the dean. Smith would later testify that he had not designated Wetherbe for an interview because he thought the off-site interview had gone poorly, he did not like the fact that Wetherbe had no tenure, and he did not agree with "some of [Wetherbe's] philosophies on being a leader."

In a meeting with Dean McInnes at the end of March 2012, Wetherbe learned that Smith considered him ineligible for the Horn Professorship because he did not have tenure. Smith met with Wetherbe and said that he was not actually eligible to be a professor at all because he was not tenured. Wetherbe asked about his application for the Horn Professorship in May, in response to which Smith reiterated that he was not eligible for it.

At a grievance hearing in July 2012, Smith confirmed that he considered a person who was neither tenured nor tenure-track not to be a professor. In August, Smith gave a deposition in another case in which Wetherbe was a party, stating that he did not think an untenured faculty member should be a professor, let alone a Horn Professor. When asked how he came to know of Wetherbe's opinion on tenure, Smith first said that it came out "in his application" and "in his off-campus interview." Wetherbe does not dispute that

Smith became aware of his views on tenure during the application process for the Horn Professorship. In his deposition, Smith confirmed that he thought Wetherbe's "views on tenure" made him unfit to be a Horn Professor and dean.

In May 2013, the new dean of the business school circulated a revised organizational chart; one change was to eliminate the position of Associate Dean for Outreach, which was held by Wetherbe. That did not mean that Wetherbe lost his teaching job, but he contends that his teaching position was still in danger as a result of the earlier statements by Smith that Wetherbe's appointment to a professorship without tenure was a mistake.

II.

Wetherbe sued. The only party who remains relevant to this appeal is Smith, who Wetherbe alleges retaliated against him in violation of the First Amendment for his speech about tenure, specifically in impeding his candidacy for the Horn Professorship and the deanship and for removing the associate dean position that Wetherbe had held.

Smith moved to dismiss for failure to state a claim and for QI. The district court denied the motion, holding that Wetherbe had adequately pleaded a case of First Amendment retaliation and that Smith was not entitled to QI because the allegations showed that he had violated Wetherbe's clearly established right not to "suffer an adverse employment decision for engaging in protected speech."

III.

We have jurisdiction because a denial of a motion to dismiss that is predicated on a defense of QI is a collateral order that is immediately reviewable. *Club Retro, L.L.C. v. Hilton*, 568 F.3d 181, 193–94 (5th Cir. 2009). We review the denial of a motion to dismiss *de novo*, *Atteberry v. Nocona Gen. Hosp.*, 430

F.3d 245, 252 (5th Cir. 2005), accepting all well-pleaded facts in the complaint as true. *Id.*

The parties dispute the correct pleading standard. Smith asserts that, because he could raise QI as a defense, the complaint needed to include additional factual pleading to show why the plaintiff could overcome QI. Wetherbe contends that the pleading standard is the same one that applies in most other cases, requiring only a short and plain statement of the facts that states a plausible claim for relief.[1] Where a defendant can claim QI, the plaintiff must include additional material in his pleadings.[2] The Supreme Court, however, has repeatedly reversed decisions that apply some form of heightened pleading,[3] although it has expressly reserved the question whether the burden of pleading can be higher where the defendant could claim QI.[4]

We need not resolve that debate here. To overcome QI at the motion-to-dismiss stage, the plaintiff must allege facts that "make out a violation of a constitutional right." *Pearson v. Callahan*, 555 U.S. 223, 232 (2009). Wetherbe has failed to allege facts necessary to state a case for First Amendment retaliation. Because he has not satisfied the requirement that he plead a violation of a constitutional right, we do not decide whether or how the second prong of QI changes his pleading obligations.[5]

---

[1] *See* FED. R. CIV. P. 8(a)(1); *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).

[2] *See, e.g.*, *Brown v. Glossip*, 878 F.2d 871, 873–74 (5th Cir. 1989); *Jackson v. City of Beaumont Police Dep't*, 958 F.2d 616, 620 (5th Cir. 1992).

[3] *See, e.g.*, *Johnson v. City of Shelby, Miss.*, 135 S. Ct. 346, 347 (2014); *Swierkiewicz v. Sorema N.A.*, 534 U.S. 506, 515 (2002).

[4] *See, e.g.*, *Leatherman v. Tarrant Cnty. Narcotics Intel. & Coord. Unit*, 507 U.S. 163, 166–67 (1993).

[5] Under the second prong of QI, a defendant is entitled to QI if his conduct was not objectively unreasonable in light of "clearly established" law at the time of the conduct. *Callahan*, 555 U.S. at 232, 244.

No. 13-11162

IV.

Parts of Wetherbe's complaint and brief focus on his lack of tenure as a motivation for Smith's alleged adverse actions. To the extent that Wetherbe alleges retaliation for his lack of tenure, he fails to state a claim. Under *Garcetti v. Ceballos*, 547 U.S. 410 (2006), a threshold inquiry for a First Amendment-retaliation claim is whether the employee was speaking as a citizen on a matter of public concern. If not, he cannot state a claim for First Amendment retaliation. *See id.* at 418. He is speaking as a citizen where the speech is "the kind of activity engaged in by citizens who do not work for the government," but "activities undertaken in the course of performing one's job" are not protected. *Williams v. Dallas Indep. Sch. Dist.*, 480 F.3d 689, 693 (5th Cir. 2007).

Even if we accept that Wetherbe's decision not to have tenure is expressive conduct that contains some speech element, his tenure status is a condition of employment that is inextricably entwined with his role as an employee. He is no more protected from adverse action for his tenure status than a plaintiff would be for refusing to attend training or complete peer evaluations.

We reached a similar conclusion in *Communications Workers of America v. Ector County Hospital District*, 467 F.3d 427 (5th Cir. 2006) (en banc). In holding that the government employer's uniform non-adornment policy for employees did not constitute First Amendment retaliation even where it penalized wearing pro-union pins, we stated that an employee is not speaking as a private citizen on a matter of public concern when the speech aspect of the conduct is only incidental to his performance of his job duties. *See id.* at 438–39. Although that case dealt with uniform adornments that were visible during the health workers' on-the-clock job performance, the rationale is instructive: A government employee cannot claim the protection of the First Amendment to set his own job conditions. The Court said as much in *Garcetti*:

6

"Restricting speech that owes its existence to a public employee's professional responsibilities does not infringe any liberties the employee might have enjoyed as a private citizen."[6]

V.

Wetherbe alleges that Smith retaliated against him for his views and speech on tenure. It is not enough for Wetherbe to aver that Smith acted against him because of Wetherbe's views on tenure. A First Amendment-retaliation claim requires that the defendant retaliated in response to some protected speech. There is no freestanding First Amendment prohibition on taking action against a public employee for his beliefs; such a claim must be made to fit within a particular prohibition, such as retaliation under *Garcetti* or political discrimination under *Branti v. Finkel*, 445 U.S. 507 (1980), and *Rutan v. Republican Party of Illinois*, 497 U.S. 62 (1990). Wetherbe has elected to claim retaliation, and so he must make a short and plain statement of facts that, accepted as true, plausibly alleges First Amendment retaliation.

Wetherbe identifies instances of speech that can be grouped into two categories. The first includes his public speeches and consulting work covering the issue of tenure over the past twenty years. The second is his speech while applying to be dean and a Horn Professor.

The first category does not provide a basis for relief because Wetherbe has not alleged that Smith was aware of this speech or that it motivated his actions. Because these are requirements of Wetherbe's claim for First Amendment retaliation, this deficiency means that Wetherbe's claim fails to defeat QI. Accepting all of the factual allegations in the complaint as true, Smith first became aware of Wetherbe's views on tenure through Wetherbe's

---

[6] *Garcetti*, 547 U.S. at 421–22; *see also Commc'ns Workers*, 467 F.3d at 439.

application to be a Horn Professor. The only indication in the complaint that Smith was aware of Wetherbe's outside activities was an excerpt from Smith's deposition in which he stated that he knew Wetherbe used his non-tenure status to bolster his credibility when consulting. That testimony took place in August 2012, after Wetherbe had already been denied the Horn Professor and dean positions and had filed grievances against Smith for both decisions.

There is nothing in the complaint that alleges Smith was aware of any of Wetherbe's outside speech when Smith allegedly wronged Wetherbe, not even a bare allegation of knowledge; in regard to Smith's knowledge of Wetherbe's views, the complaint even says that "clearly it came out during the course of looking at him as a potential candidate to be a Horn Professor." Likewise, Wetherbe does not claim that Smith retaliated against him for those outside speaking activities. The complaint alleges that Smith acted against Wetherbe because of his views on tenure, but a First Amendment-retaliation claim must be based on retaliation against First Amendment-protected activity. The second category—Wetherbe's speech to Smith and other university agents while he was applying for these positions—does not provide a ground for a retaliation claim because Wetherbe was not speaking as a private citizen on a matter of public concern. Because this prevents Wetherbe from having a claim for First Amendment retaliation regarding this speech, QI likewise bars his claim here.

The core principle of *Garcetti* is that "[r]estricting speech that owes its existence to a public employee's professional responsibilities does not infringe any liberties the employee might have enjoyed as a private citizen." *Garcetti*, 547 U.S. at 421–22. Though a First Amendment-retaliation claim can attach even where he speaks only to other government employees, an employee generally does not have First Amendment protection for communications that "relate to his own job function up the chain of command . . . ." *Davis v. McKinney*, 518 F.3d 304, 313 n.3 (5th Cir. 2008).

Case 5:12-cv-00218-A   Document 79   Filed 01/13/15   Page 9 of 10   PageID 1900

No. 13-11162

The speech in this case most closely resembles such a circumstance. Wetherbe's speech about tenure during interviews and other application-related conversations consisted of communications to the individuals responsible for screening and hiring candidates, and his comments were related to an issue of central importance to the operation of the university in which he sought a position of prominence. This is a situation in which the speech plainly owes its existence to the government, whose purpose in conducting interviews is for the applicant to speak to the government, answer its questions, and make statements in an effort to get hired.[7]

Treating speech during interviews categorically as private-citizen speech under *Garcetti* would create an unworkable system for government employers. Interviews necessarily involve discussions that touch on matters that—when addressed in the public sphere—might count as issues of public concern. Especially when evaluating an applicant for a high-responsibility leadership position, an employer will want to ask about his leadership philosophy, his opinion on issues that are central to the operation and mission of the institution, and other concerns that will allow the interviewers to gauge whether the applicant will be an effective employee. Nothing in First Amendment jurisprudence suggests that a government employer is so restricted relative to a private employer that the government cannot screen applicants to ensure that they actually will perform their duties with maximal diligence.[8]

---

[7] In addition, the purely self-serving nature of statements made during job interviews cautions strongly against considering the applicant's statements to be on matters of public concern. *See Foley v. Univ. of Houston Sys.*, 355 F.3d 333, 341 (5th Cir. 2003) ("Speech that is primarily motivated by, or primarily addresses, the employee's own employment status rather than a matter of public concern does not give rise to a cause of action under § 1983.").

[8] We need not answer today whether and to what degree the questioning must be related to the position that the applicant is seeking; the facts of this case would satisfy even an exacting standard. And nothing here speaks to the standard for how a government employer must treat an applicant's speech that occurred outside of the interviewing context.

VI.

The only remaining claim is the alleged violation of Article I, Section 8 of the Texas Constitution. The Texas Constitution's free-speech protections can be more extensive than the First Amendment's protections, but the Texas courts will assume the protections are identical if the litigant does not show why they are different.[9] This is the same approach we applied in *Finch v. Fort Bend Independent School District*, 333 F.3d 555, 563 n.4 (5th Cir. 2003), in which the parties disagreed about whether the state constitution is more protective of speech than is the First Amendment.

The district court did not clearly state the ground on which it denied Smith's motion respecting the state-law claim. Smith's motion to dismiss that gave rise to this appeal specifically mentions the state-law claim only when it asserts that Wetherbe failed to state a claim, omitting any reference to the state claims in its QI analysis. And Smith's briefs make no mention of the district court's decision on the state-law claim. The only conclusion we can draw is that this appeal does not reach the decision not to dismiss the free-speech claims under the Texas Constitution.

The order denying the motion to dismiss the First Amendment-retaliation claim is REVERSED, and a judgment of dismissal for failure to state a claim is RENDERED on that issue. We express no opinion on the decision not to dismiss the state-law free-speech claim. This matter is REMANDED for further proceedings as needed.

---

[9] *See Pruett v. Harris Cnty. Bail Bond Bd.*, 249 S.W.3d 447, 455 n.5 (Tex. 2008); *Tex. Dept. of Transp. v. Barber*, 111 S.W.3d 86, 105–06 (Tex. 2003).